Ratcliff v. Faris.

---

JOSIAH C. RATCLIFF AND OTHERS, APPELLEES, v. JAMES H. FARIS, TREASURER OF HAMILTON COUNTY, APPELLANT.

1. **County Superintendent of Public Instruction.** The powers and duties of a county superintendent of public instruction are derived entirely from the statute. He can only exercise such powers as are especially granted, or are incidently necessary to carry the same into effect. It must appear from the record of his proceedings that he has jurisdiction, or his acts will be void.

2. ———: DIVISION OF SCHOOL DISTRICTS. When the statute requires him, in cases where a new school district is formed in whole or in part from one or more districts possessed of a school house, or other property, to ascertain and *determine* the amount justly due to such new district from any district or districts out of which it may have been formed, and to certify the same to the county clerk—*Held*, where it appeared that there was no finding, or determination whatever, by the superintendent, as to property of any kind retained by a district, out of which a new district was formed, that his certificate to the county clerk, stating the amount of tax to be levied on the old district to be paid to the new, when collected, was a nullity.

APPEAL from the district court of Hamilton county. The action there was in equity to enjoin the collection of a tax levied upon the real and personal property of the plaintiffs. This property was situated in school district number six of that county, and the tax in question was levied by the county commissioners in pursuance of an order of the county superintendent of public instruc-

Ratcliff v. Faris.

tion, stating that the sum of $1,178,48 was due from district number six to district number nine, which had formerly been a part of district number six. The defendant alleged in his answer that at the time of the division and formation of district number nine the above amount properly belonged to that district, that district number six had levied upon its original territory a sum of which the above amount belonged to district number nine, and that the same had been collected by district number six and used by it. The plaintiffs replied, denying these allegations of the answer. Upon a trial before GASLIN, J., sitting in the district court of Hamilton county, a decree was entered enjoining the collection of the tax, and Faris, the treasurer, appealed.

*Edward Bates*, for appellant, contended that the certificate of the county superintendent could not be attacked in this collateral way. It is a kind of an adjudication, and if erroneous, must be corrected by a direct proceeding. General Statutes, 1873, Chap. 68, page 962, Sec. 7, 8, and 9. *Wallace v. Brown*, 22 Ark., 118. *Western R. R. Co. v. Nolan*, 48 N. Y., 513. *Mechanics and Traders Bank v. Henry Dubolt*, 1 Ohio State, 591.

A court of equity will not entertain an injunction in the case of personal property tax. Cooley on Taxation, page 538; subject, "Personal Tax." The appellees make no case for such relief. *Williams v. Detroit*, 2 Mich., 560. *Conley v. Chedic*, 6 Nev., 222.

*Mason & Whedon* for appellees.

Does the evidence warrant the decree of the court below? Admitting for the purpose of this argument that district six had property on the second of April, 1872, it then became the duty of the county superintendent, un-

der section 4, of chapter 68, of the General Statutes (if that section is constitutional), " to determine at the time of forming the new district." But it is submitted that to determine the amount due more than three years after the formation of the new district, was not in any sense a compliance with the requirements of this section of the statute, and especially so where the pretended determination was made by one who assumed the duties of the office long after the formation of the new district. It was for the court below to determine, under the issues, whether the superintendent complied with the laws in his pretended finding as to the amount due, and as that court passed upon that question of fact, its finding should not be set aside here. *A. & N. R. R. v. Washburn*, 5 Neb., 117.

But the important question to be determined in this case is: Was school district six possessed of any property on the second of April, 1872? It will be conceded by the appellant that the only property the district had, if any, was the tax voted on the first day of April, 1872, one day before the formation of the new district.

The appellees contend that this tax was not "property" in any sense of the term. The term property is said to include lands, and tenements, hereditaments, and commodities, the value of which may be measured in money. Herman on Executions, 140.

If this be a correct definition of the word property, what was the money value of this pretended tax on the second of April, 1872?

Suppose the district board had never reported to the county clerk this vote, and the tax had never been placed upon the tax duplicate, would district six have acquired any property by this vote? We think not. The tax could not be collected until all the steps imposed by the statute had been taken, and the fact that these steps were taken after the division and the tax collected does not

entitle district nine to any portion thereof. *Grant Co. v. Delaware Co.*, 4 Blackf., 256. *Devor v. McClintock*, 9 Watts & S., 80. *Barnett v. Jefferson Co*, 9 Watts, 166. If this court should hold that the vote by the district is all that is necessary in order to constitute a tax, even then district nine is not entitled to any part of the same, because a tax is not property. Opinion of Judges, 58 Me., 591. *Hilbish v. Catherman*, 64 Penn. State, 154. *Perry v. Washburn*, 20 Cal. 318. Cooley on Taxation, 1 Blackwell on Tax Titles, 1. The appellant contends that the finding of the superintendent was an adjudication, and cannot be attached collaterally, and cites authorities to support this theory. But it is submitted that the authorities cited do not sustain the proposition.

The statute says the county superintendent, at the time of forming the new district, or as soon thereafter as may be, shall ascertain, etc. It nowhere authorizes his successor in office to perform this duty; he acted without jurisdiction, and his acts are void, granting he acted judicially. 1 Conn. 40. 5 Harr & J., Ind., 42. 8 Cranch, 9.

MAXWELL, J.

School district number six, of Hamilton county, was organized in February, 1872, and comprised the east half of township ten north, range six west of the sixth principal meridian. In the following month, the boundaries of the district were enlarged so as to include all of township ten, range six, and also townships ten north, ranges seven and eight west of the sixth principal meridian.

On the first day of April, 1872, the district held its first annual meeting, at which " it was voted that the amount of taxes levied on the taxable property for school district purposes for the coming year be as follows, to-

wit: For building and school-house fund, ten mills on assessed valuation. Incidental and teacher's fund, five mills; total, fifteen mills." On the ninth day of April, 1872, a new district was formed from district number six, by taking the west half of township ten north, range six west, and all of townships ten north, of ranges seven and eight west. The new district thus formed was numbered nine. At the time district number nine was formed there was no school-house or property of any kind belonging to school district number six. Consequently, the then county superintendent made no report to the county clerk, as required by section eight of the school law (Gen. Statutes, 962.) On the twenty-seventh of May, 1872, school district number six, at an election duly held, voted bonds to the amount of $1,000, for the purpose of building a school-house, and again, on the twenty-fifth of January, 1873, voted bonds in the further sum of $800 for the purpose of completing the school-house, and $225 for other purposes. A considerable portion of these bonds has been paid.

On the first day of July, 1875, the county superintendent of public instruction transmitted the following order to the county clerk of Hamilton county:

" *To the Hon. County Clerk of Hamilton County:*

"SIR:—Report to the county commissioners to be levied on school district number six, to be paid when collected to school district number nine, $1,078.48.

"J. T. PRICE,
"*County Superintendent.*

"*July* 1, 1875."

Upon this order the tax in question was levied.

Neither the pleadings nor proof make it entirely clear as to the amount collected in school district number six, for school purposes, under the levy for 1872. And so far as the legality of the tax in controversy is concerned,

it is not material, as the inquiry is limited to the authority of the county superintendent to make the certificate in question. Section seven of the chapter entitled, "Schools" (General Statutes 962), provides that: "When a new district is formed in whole 'or in part, from one or more districts possessed of a *school-house, or other property*, the county superintendent *at the time* of forming such new district, or *as soon thereafter as may be*, shall ascertain and determine the amount justly due to such new district from any district or districts out of which it may have been in whole or in part formed, which amount shall be ascertained and determined according to the relative value of the taxable property in the respective parts of such former district or districts at the time of such division."

Section eight provides that: "The amount of such proportion, when so ascertained and determined, shall be certified by the county superintendent to the county clerk," etc.

The powers and duties of a county superintendent of public instruction are derived entirely from the statute. He can only exercise such powers as are especially granted, or are incidently necessary to carry the same into effect. Any proceedings on his part beyond the scope of his authority, or where he has no jurisdiction, are absolutely void.

There is no pretence that school district number six had a school-house, or property of any kind, at the time district number nine was formed in April, 1872; yet, more than three years after the formation of district number nine, the successor to the officer who formed the district, without a *finding* or *determination* of any kind as to the property received by district number six, issued the certificate in question to the county clerk. The certificate does not purport to state the object of the levy, and is merely a direction to the county clerk.

Section three of the act provides that: "Whenever the county superintendent of any county shall form a new district therein, he shall deliver to a taxable inhabitant of such district a notice in writing of the formation of said district, describing its boundaries, and specifying the time and place of holding the first meeting, which notice, with the fact of such delivery, shall be entered upon the record by the county superintendent." This record is also referred to in section fifteen.

While there is nothing in the statute prescribing the requisites of *the record*, yet, from the nature of the duties of the superintendent, it should contain a minute detail of his proceedings in the formation of a new district, and of the amount justly due (if anything) to such new district from any district or districts out of which it may have been in whole or in part formed. In determining the amount due he acts judicially, and the record should show that he has jurisdiction.

As it does not appear from either the pleadings or proof in this case that the superintendent had jurisdiction, his action in the premises is void. The decree of the district court is clearly right, and must be affirmed.

DECREE AFFIRMED.